## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TASHICA FULTON-GREEN and** | : | |
| **DANIEL CREVAK, on behalf of** | : | **CIVIL ACTION** |
| **themselves and all others similarly** | : | |
| **situated,** | : | |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | **NO. 18-274** |
| | : | |
| **ACCOLADE, INC.,** | : | |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                                  SEPTEMBER 2019

This case stems from a data breach that resulted when an Accolade employee released all of the W-2s for its U.S.-based employees to a cybercriminal. After negotiations and mediation, the parties entered into a settlement agreement, filed a motion for final approval, and Class Counsel filed an unopposed motion for attorneys' fees. Because the settlement is fair, reasonable, and adequate, the Court grants the parties' motion for final approval. Because the proposed attorneys' fees are reasonable, the Court grants Class Counsel's motion for attorneys' fees.

### BACKGROUND

In January 2017, Accolade, Inc. was the target of a "phishing" scheme.[1] A cybercriminal requested the W-2s for current and former U.S.-based Accolade employees from an Accolade employee who then sent the unencrypted files via email. The W-2s included personally identifying information (PII) such as employees' names, addresses, Social Security Numbers, salaries, and

---

[1]     A "phishing" scheme is an attempt to acquire personal information, such as usernames, passwords, credit card details, and other sensitive information, by masquerading as a trustworthy entity or individual through an electronic communication, such as email.

1

taxes withheld for 2016. Tashica Fulton-Green's and Daniel Crevak's PII was included in the breach. They filed suit against Accolade on behalf of themselves and all others similarly situated alleging negligence, negligence per se, breach of implied contract, and breach of fiduciary duty.

The parties entered into a settlement agreement following negotiations and a private mediation overseen by Rodney A. Max of Upchurch Watson White & Max. The parties agreed to settle this action, pursuant to the terms of their settlement agreement, and subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy of the settlement. Final approval of the settlement will result in dismissal of this action with prejudice. Per the terms of the preliminary settlement approval, the parties filed a motion for final approval and Class Counsel filed an unopposed motion for attorneys' fees.

The notice deadline regarding this class settlement was 30 days after preliminary approval, which was docketed on January 24, 2019. The claims deadline is February 17, 2020; however, the opt-out/objection deadline was May 23, 2018. No one filed an opt-out or objection despite the fact that the notice program reached 98.8% of class members.

## I.    Class Definition

The settlement class consists of:

> All current and former Accolade employees whose W-2 data was compromised as a result of the Data Disclosure which occurred on or about January 17, 2017.

## II.    Settlement Terms

Under the settlement, all class members are entitled to enroll in identity theft protection for 24 months through Experian's ProtectMyID service. Class members who have already enrolled in the program will be instructed on how to enroll for an additional 24 months. Class members are also entitled to seek reimbursement for four claim categories (A–D), with an overall cap of $1,500 paid to each class member. However, participants must have spent at least one full hour

2

dealing with the theft of their PII before they can claim any lost time. The treatment of each claim category is set out as follows:

**Claim Category A**: Class members who had a false tax return filed after January 16, 2017 are eligible for a basic payment of $75. They must provide proof of the false tax return, attest that they have no knowledge of a false return being filed in the previous three years, submit a self-verifying statement for time spent dealing with the effects of the breach, and submit documentation of recovery. Accolade will reimburse claimants at $25 per hour spent dealing with the effects of a false tax return. There is a maximum recovery of $275 per claimant for claims made pursuant to Claim Category A.

**Claim Category B**: Class members who had an Internal Revenue Service (IRS) tax transcript requested using their PII after January 16, 2017 and submitted an identity theft affidavit to the IRS are eligible for payment of $75. They must provide proof of the issuance of a tax transcript by the IRS and submission of an identity theft affidavit, attest that they have no knowledge of an IRS transcript being fraudulently requested using their PII in the previous three years, and submit a self-verifying statement for time spent dealing with the effects of the breach. Accolade will reimburse Category B claimants at $25 per hour spent dealing with the effects of having their IRS tax transcript requested using their PII. There is a maximum per claimant recovery of $125 for claims made pursuant to Claim Category B.

**Claim Category C**: Class members who experienced incidents of identity theft or financial fraud (other than those covered by Categories A and B) after January 16, 2017 are eligible for payment of $75. This includes the opening of new bank accounts, credit applications, FAFSA applications, etc. It does not include fraud on existing credit cards. These Category C class members must provide proof of fraudulent activity or details of such activity and why proof does

3

not exist, attest that they have no knowledge of identity theft (other than fraudulent credit card activity) filed in the previous three years, and submit a self-verifying statement for time spent dealing with the effects of the breach. Accolade will reimburse claimants at $25 per hour spent dealing with the effects of identity theft. There is a maximum per claimant recovery of $275 for claims made pursuant to Claim Category C.

**Claim Category D**: Class members who claim they suffered out of pocket expenses (other than those covered in categories A, B, or C) as a result of the data disclosure are entitled to reimbursement of such amount. They must submit reasonable documentation supporting their claim for expenses, proof of fraudulent activity or details of such activity or why proof does not exist, include a detailed explanation of the activities related to the data disclosure that the claimant spent time on, and submit a self-verifying statement for time spent dealing with the effects of the breach. Accolade will reimburse claimants at $25 per hour spent for up to 3 hours for claims made pursuant to Claim Category D. Claimants are not entitled to reimbursement of expenses that have already been reimbursed through Experian or any other source.

**Injunctive Relief:** The settlement agreement also provides for injunctive relief which includes undertaking and maintaining the following cybersecurity measures for two years: cybersecurity awareness and training program, training employees on new policies for handling PII, implementing and operating systems to help detect and filter phishing attempts, restricting access to tax and payroll information, random testing of policies, and access control review.

**Claims Administration:** The preliminary settlement approval appointed Epiq to administer the claims in the order they are received. To make a claim, a Settlement Class Member must submit a valid, timely, and sworn Claim Form by the deadline of February 17, 2020. Class

members have 30 days from the date of a written notice to cure any deficiencies in their claim forms.

## III.    Class Member Response

After the Court granted preliminary approval in January 2019, the Settlement Administrator mailed 937 Notices via First Class Mail to all Settlement Class Members. According to the parties, the Notice Program reached 98.8% (or 925 out of 937) of the Settlement Class. The parties also set up a neutral website, which includes the Complaint, Long Form Notice, Settlement Agreement, Order Granting Preliminary Approval, paper Claim Form, and a frequently asked questions page. An automated phone number that is available 24/7 has fielded 63 calls representing 491 minutes of use and live agents have also handled 33 inbound calls representing 428 minutes of use and 28 outbound calls representing 62 minutes of use.

The parties contend that the class member response has been positive. The deadline to request exclusion forms was May 23, 2019 and no one has requested to be excluded or filed an objection. CAFA notice was provided to the United States and applicable state Attorneys General, none of whom have raised concerns. Sixteen claims have been submitted thus far, and Class Counsel expect up to 28 claims in total.

## DISCUSSION

The Court held a preliminary approval hearing on January 9, 2019 and granted preliminary approval on January 24. In accordance with the deadlines set out in this Court's preliminary approval order, the parties moved for final approval and filed a motion for attorneys' fees on June 24. The Court subsequently held a final approval hearing on July 24. For the reasons outlined in this Memorandum, the Court grants final approval of the class settlement and awards attorneys' fees of $300,000, $5,000 for reimbursement of reasonable costs and expenses, and $1,000 service awards for both of the class representatives.

5

## I.   Motion for Final Approval

### A. Class Certification

Where, as here, the Court has not already certified a class prior to evaluating a settlement, the Court initially must determine whether the proposed settlement classes satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) ("[A] district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met."). The Third Circuit Court of Appeals summarized the demands of Rule 23 as follows:

> Rule 23(a) contains four threshold requirements, which every putative class must satisfy:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. Upon finding each of these prerequisites satisfied, a district court must then determine that the proposed class fits within one of the categories of class actions enumerated in Rule 23(b) . . .
>
> [C]ertification pursuant to Rule 23(b)(3) seeking monetary compensation is permitted where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 180 (3d Cir. 1994). These twin requirements are commonly referred to as predominance and superiority.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).

6

The "'[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23.'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257-58 (3d Cir. 2009) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)).

### 1. Numerosity

Under Federal Rule of Civil Procedure 23(a), the first factor to consider in certifying a class is whether "the class is so numerous that joinder of all members is impracticable." The plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 543 (D.N.J. 1999) (citation omitted); *see also* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1762 (3d ed. 2005) ("'[I]mpracticable' does not mean 'impossible.' The representatives only need to show that it is extremely difficult or inconvenient to join all the members of the class."); 1 A. Conte & H. Newberg, *Class Actions* § 3:14 (5th ed. 2011) ("Plaintiffs bear the burden of demonstrating that joinder is impracticable, but *impracticable* does not mean *impossible*."). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citation omitted). Because there are hundreds of class members, this factor is easily met.

### 2. Commonality

Under Federal Rule of Civil Procedure 23(a), the second factor to consider in certifying a class is whether "there are questions of law or fact common to the class." The commonality prerequisite does not require that all members of the prospective class share identical claims. *Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988) (relying on *Eisenberg v. Gagnon*, 766 F.2d

7

770, 786 (3d Cir. 1985)). Rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). As the Supreme Court explained: "'What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original). Here, there are common questions and corresponding common answers concerning how the data breached occurred, whether Accolade had a duty to protect PII, and whether the employees were harmed by the breach. Thus, this factor is satisfied for purposes of certifying the settlement classes.

### 3. Typicality

The third 23(a) factor is typicality, *i.e.*, whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). Here, Accolade released the W-2s for Ms. Fulton-Green and Mr. Crevak in the same data breach as that of all the other class members. Mr. Crevak had false tax returns filed and someone attempted to request his tax information from the IRS as a result of the breach. Although Ms. Fulton-Green has not suffered from identity theft, she has enrolled in ProtectMyID Alert and has had to spend time dealing with the repercussions of the breach. Mr. Crevak's and Ms. Fulton-Green's claims are virtually identical to those of other class members. Thus, their claims are typical of the classes delineated for the proposed settlement.

### 4. Adequacy of Representation

The final Rule 23(a) factor focuses on adequacy – whether "the representative parties will fairly and adequately protect the interests of the class." The rule "tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016). This means both that class representatives do not have interests antagonistic to the class and that class counsel are sufficiently skilled and experienced to litigate the case. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012) (the adequacy of the representative parties requirement "has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs."). Essentially, the inquiry into the adequacy of the representative parties examines whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179 (citations omitted); *see also Dewey*, 681 F.3d at 182 (recognizing that "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class"). In other words, "Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. If any conflicts "undercut the representative plaintiffs' ability to adequately represent the class" they are "fundamental," such that class representation is structurally faulty and Rule 23(a)(4) cannot be satisfied. *Dewey*, 681 F.3d at 184-85. There are no apparent conflicts between named class representatives and other potential class members because the class representatives' claims are nearly identical to those of all other class members.

The Court analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4) based upon the factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g).") (citing Fed. R. Civ. P. 23(g), 2003 advisory comm. note). The Court of Appeals for the Third Circuit has "emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 801 (3d Cir. 1995); *see also In re Nat'l Football League*, 821 F.2d at 428.

First, the parties have assured the Court that the "[p]laintiffs have selected and retained experienced counsel to represent themselves and the Settlement Class[.]" Mem. in Supp. of Unopposed Mot. for Final Approval at 14 (Doc. No. 33-1). Class Counsel are well-versed in prosecuting class actions, in particular data breach and data disclosure cases. *Id.* at 18 (citing Yanchunis Decl. ¶ 26).

Second, although formal discovery has not yet occurred, the parties have exchanged a substantial amount of information through an "informal process" and these disclosures provide enough information, given the discrete issues in this case, to weigh the terms of settlement against the risks of ongoing litigation. *Id.* at 14–15.

Third, the parties worked with an experienced mediator to facilitate arm's length negotiations. *Id.* at 18 (Yanchunis Decl. ¶¶ 14–18); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 301 F.R.D. 191, 198-99 (E.D. Pa. 2014) (granting preliminary approval after two months of negotiations under the guidance of a special master); *In re Cigna Corp. Sec.*

*Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Concerning the presumption of fairness, it is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as a mediator."). Therefore, this final Rule 23(a) factor weighs in favor of conditionally certifying a settlement class.

### 5. *Predominance*

Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals. "Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation [than Rule 23(a)(2)'s commonality element] upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan*, 667 F.3d at 297 (citing *In re Ins. Broker.*, 579 F.3d at 266). Third Circuit precedent "provides that the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Id.* Because Accolade's role in the data breach is at the heart of all of the plaintiffs' claims, the plaintiffs have met their burden to show predominance for the purposes of conditional class certification.

### 6. *Superiority*

The second inquiry under Rule 23(b)(3) deals with whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Several factors are relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In effect, "[t]he superiority

11

requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins.*, 148 F.3d at 316 (internal quotations omitted).

The Court makes no determination at this time concerning the manageability of the plaintiffs' suit as a class action if this action were to go to trial in a single forum or, to the extent this possibility remains, be remanded to the various transferor courts. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all of the claims are almost identical because they stem out of the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the claims may be small and impractical to litigate on a case by case basis. This is particularly true for people like Ms. Fulton-Green who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs. A class action seems to be a superior vehicle for this suit, particularly at the settlement stage. Thus, the class certification meets the requirements of Rule 23(a) and (b).

## B. Notice

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *In re Prudential Ins.*, 148 F.3d at 306. Fed. R. Civ. P. 23 sets forth two provisions concerning notice to class members.

First, Fed. R. Civ. P. 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members

identifiable through reasonable effort. This notice is to be given to all potential members of a Rule

23(b)(3) class. *Id.* at 326. Specifically, the Rule provides that such notice

> must, in clear, concise and plain language, state: (i) the nature of the
> action; (ii) the definition of the class certified; (iii) the class claims,
> issues or defenses; (iv) the class member's right to enter an
> appearance by an attorney; (v) the class member's right to be
> excluded from the class; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of settlement on class
> members.

Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires all members of the class be notified of the terms of any

proposed settlement. Fed. R. Civ. P. 23(e). This "notice is designed to summarize the litigation

and the settlement" and "'to apprise class members of the right and opportunity to inspect the

complete settlement documents, papers, and pleadings filed in the litigation.'" *In re Prudential

Ins.*, 148 F.3d at 327 (quoting 2 Newberg, *supra*, § 8.32 at 8-109).

In this action, the Settlement Administrator mailed 937 notices and the Notice Program

reached 98.8% of the Settlement Class. The neutral website set up by the parties includes the

Complaint, Long Form Notice, Settlement Agreement, Order Granting Preliminary Approval,

paper Claim Form, and a frequently asked questions page. The parties also made available an

automated phone number that is available 24/7. Thus, the Court finds that the parties' notice

program satisfies Rules 23(c)(2)(B) and (e).

## C. Final Approval of the Settlement

The Court must also consider Amended Rule 23(e) as well as any traditional approaches

prior to approving a proposed settlement of a class action. "'The decision of whether to approve

a proposed settlement of a class action is left to the sound discretion of the district court.'" *In re

Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)

(quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

### 1. Amended Rule 23(e)

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Court may only approve a settlement that would bind class members upon a finding that the settlement is "fair, reasonable, and adequate". Fed. R. Civ. P. 23(e)(2). The Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* As noted, the class representatives and Class Counsel have adequately represented the class at an arm's length negotiation. The parties agree that both the named representatives and Class Counsel have adequately represented the class throughout the case. Class Counsel are well-versed in class litigation, including class privacy and data breach litigation. The parties used a mediator to assist them in negotiating the settlement at arm's length. Although formal discovery has not taken place, Counsel has conducted extensive and lengthy interviews of the plaintiffs,

14

reviewed documents regarding the data disclosure, and analyzed applicable Pennsylvania law on data disclosures.

Moreover, the relief provided for the class is adequate. This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-1998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010 (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results). The injunctive relief also includes new policies, procedures, and training to prevent similar breaches in the future.

In contrast, without a settlement, the plaintiffs would face an uphill battle in that they would need to survive a motion to dismiss, maintain certification, and, likely, motions for summary judgment. This would be a time consuming and expensive process that would delay relief for class members. The proposed method for distributing relief is also quite straight-forward in this case because of the easy to understand claims forms, which also include a process for disputes. As for attorneys' fees (which are discussed in detail later), Class Counsel ask for $300,000 in fees and $5,000 in reimbursement costs. This amount is less than Class Counsel's lodestar amount.

Lastly, the settlement treats each class member individually. Each and every class member can receive a reimbursement specific to their losses, including time, out of pocket expenses, or both. Thus, the Amended 23(e) factors weigh heavily in favor of approving the Settlement.

### 2. Traditional Third Circuit Factors

When the Rules Committee amended Rule 23(e), the Committee did not intend to override traditional factors to assess fairness in a class settlement. Trial courts have considerable discretion to evaluate a proposed class action settlement. As such, the Court should consider whether the

15

proposed settlement is within the "range of reasonableness" that experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic & Pacific Tea Co.*, 96 F.R.D. 632, 634 (D.N.J. 1983).

The Court of Appeals for the Third Circuit has indicated that courts should consider the *Girsh* factors in determining whether a proposed class action settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Nat'l Football League*, 821 F.3d at 437 (citing *Girsh*, 521 F.2d at 157).

In *In re Prudential Ins.*, the Third Circuit Court of Appeals also identified additional, non-exclusive factors for courts to consider for a "thoroughgoing analysis of settlement terms." *See In re Pet Food*, 629 F.3d at 350. Those factors, which often overlap with the *Girsh* factors, include:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provision for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*See In re Prudential Ins.*, 148 F.3d at 323. While the Court must make findings as to the *Girsh* factors, the *Prudential* factors are illustrative of additional factors that may be useful and do not trigger a requirement that specific findings be made.

The Third Circuit Court of Appeals has held that although there is an overriding public interest in settling class actions, district courts should apply "an even more rigorous, heightened standard in cases where settlement negotiations precede class certification, and approval for settlement and class certification are sought simultaneously." *In re Pet Food*, 629 F.3d at 350 (internal quotations omitted). Thus, the Court must make an independent analysis of all of the *Girsh* factors (and the *Prudential* factors, as appropriate) and may affirmatively seek out information to the extent that the parties have either not supplied it or have provided only conclusory statements. *See id.* at 350-51. On the other hand, because a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class") (internal quotation omitted). Moreover, this settlement is entitled to an initial presumption of fairness because "(1) the settlement negotiations occurred at arms' length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) [no member] of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (internal quotation omitted).

      a.   The Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor takes into account the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (internal

17

quotation omitted). As to this factor, the parties claim that continued litigation would entail a lengthy and expensive legal battle that may result in no relief or substantially delayed relief to the Settlement Classes. They also argue that appeals would likely follow any trial on the merits. This factor weighs in favor of the settlement.

    b. The Reaction of the Class to the Settlement

  As noted, notice was successful at reaching 98.8% of the 937 class members and there have been no opt outs or objections. Sixteen claims have matriculated thus far, and Class Counsel expect up to 28 claims in total. Given that no one has requested to be excluded, this factor was counted in favor of settlement approval.

    c. The Stage of the Proceedings and the Amount of Discovery Completed

  This *Girsh* factor requires the Court to evaluate whether the plaintiffs had an "adequate appreciation of the merits of the case before negotiating" settlement. *In re Prudential Ins.*, 148 F.3d at 319 (internal quotation omitted). The parties have exchanged a substantial amount of information through an informal discovery process. Thus, even at this early stage of the proceedings, a reasonable amount of informal discovery has been done – enough to give both sides a fairly accurate view of continued litigation.

    d. The Risks of Establishing Liability and Damages and Maintaining the Class Action through Trial

  These three *Girsh* factors require the Court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537. As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp.*, 55 F.3d at 814. As to damages, this factor "attempts to measure the expected value of litigating the

action rather than settling it at the current time." *In re Cendant Corp.*, 264 F.3d at 238-39 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 816). Finally, "[b]ecause the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor [concerning the risks of maintaining the class action through trial] measures the likelihood of obtaining and keeping a class certified if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537 (internal quotations omitted).

With respect to liability and damages, Class Counsel emphasize that even though they believe they would ultimately prevail at trial, there are risks inherent in going to trial, particularly in this area of class litigation. Likewise, with respect to the risk of maintaining the class action through trial, the Third Circuit Court of Appeals has recognized that "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins.*, 148 F.3d at 321. The Court agrees that the risks of continued litigation and maintaining the class action weigh in favor of an early resolution.

e. The Ability of the Defendant to Withstand a Greater Judgment

Although the Settlement Fund is uncapped in this case, each individual claim is capped. Even so, there is a very real possibility that class members might not recover anything if this litigation were to move forward. Thus, this factor weighs in favor of settlement.

f. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing." *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *In re Gen. Motors Corp.*, 55 F.3d at 806). Class Counsel emphasize that the great costs and challenges associated with continuing litigation would outweigh any potential for greater recovery

19

at trial. Particularly given the real possibility of class members receiving nothing if litigation were to move forward, the Court accepts that the Settlement here is reasonable. All the *Girsh* factors weigh heavily in favor of approving the Settlement.

For the foregoing reasons, the Court grants the plaintiffs' Motion.

## II.    Motion for Attorneys' Fees

In addition to the joint motion for final approval, the plaintiffs also filed an uncontested motion for attorneys' fees. Class Counsel request $300,000 in attorneys' fees, $5,000 for reimbursement of reasonable costs, and $1,000 service awards for each of the class representatives. An award of attorneys' fees is a discretionary matter, considering the unique factors of the case. *See In re Computron Software*, 6 F. Supp. 2d 313, 321-23 (D.N.J. 1998); *In re Prudential Ins.*, 148 F.3d at 338. There are two conventional methods of calculating attorneys' fees in class actions – the percentage-of-recovery method and the lodestar method. *See In re Prudential Ins.*, 148 F.3d at 332-33. The percentage-of-recovery method is often favored in cases involving a common fund, because it rewards counsel for success and penalizes counsel for waste or failure. *In re Gen. Motors Corp.*, 55 F.3d at 821 (3d Cir. 1995). Meanwhile, the lodestar method is more commonly applied in statutory fee-shifting cases. *Id.*; *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 323 (D.N.J. 1997). The lodestar method "may also be applied in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *In re Prudential Ins.*, 148 F.3d at 332.

Because this is not a traditional common fund case, it is most appropriately considered under the lodestar method. Accolade has agreed to pay attorneys' fees and class benefits in addition to what class members will receive pursuant to the Settlement Agreement.

20

## A. Lodestar Award

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005), *as amended* (Feb. 25, 2005). "The lodestar method has two separate components, both of which must be "reasonable": (1) the rate charged; and (2) the total hours spent." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 259 (E.D. Pa. 2011). "Courts applying the lodestar method are to 'multipl[y] the number of hours reasonably worked by a reasonable hourly rate.'" *Id.* (quoting *Perry v. FleetBoston Finan. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005)). "A court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience and reputation." *Perry*, 229 F.R.D. at 119.

In this case, the plaintiffs seek $300,000 in costs, which they state is less than what they have invested in this litigation. They estimate that their lodestar amount at this point is $472,707.15 and that attorneys and paralegals have spent 560 hours on the litigation thus far. Comparing their requested fee to the lodestar estimate results in a "negative" lodestar multiplier of 0.634. Class Counsel argue that the amount of time spent was necessary to achieve the result here and discuss the time spent on, for example, investing claims, formulating case strategy, drafting complaints, engaging in mediation, negotiating and drafting the agreement, drafting these papers, preparing and overseeing dissemination of Class Notice, dealing with class members, and preparing for Settlement.

Class Counsel's rates range from $202 to $975 per hour. Courts have considered similar rates reasonable in the past. *See In re Viropharma Inc., Sec. Litig.*, No. 12-2714, 2016 WL 312108,

at *18 (E.D. Pa. Jan. 25, 2016) ("The hourly billing rates of all of Plaintiff's Counsel range from $610 to $925 for partners, $475 to $750 for of counsels, and $350 to $700 for other attorneys."); *In re Avandia Mktg., Sales Practices and Products Liability Litig.*, No. 07-1871, 2012 WL 6923367, at *10 (E.D. Pa. 2012) (concluding a top hourly rate of $595 was "particularly reasonable in comparison" to the hourly rates of top Philadelphia firms).

Given that the rates the attorneys are requesting are only 63.4% of their lodestar total, the fact that attorneys' fees were negotiated on top of the settlement in this case, and that Accolade is not objecting to the attorneys' fees, the fees are reasonable and are granted.

## B. Percentage-of-Recovery

Although the Court agrees with Class Counsel that the lodestar method is the appropriate calculation in this case, courts within the Third Circuit will often perform a "cross-check" to ensure reasonable fees. *Reibstein*, 761 F. Supp. 2d at 261. Comparing the requested fees to a percentage recovery amount, the requested fees also appear reasonable.

Class Counsel request a 21% fee. "Courts have allowed attorney compensation ranging from 19 to 45% of the settlement fund created, and one Circuit panel has concluded that the appropriate benchmark for fee awards is 25%." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (internal citations omitted).

Courts apply the *Gunter* factors to determine if the fee produced is reasonable. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000). "Among other things, these factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *Id.*

22

### 1. Size of the Fund

There are 937 class members, each of whom is entitled to enroll in 24 months of identity theft monitoring services and receive up to $1500 in expenses. Accolade is also subject to injunctive relief for two years, paying the costs of claims administration, class notice, attorneys' fees, and service awards in an amount separate from the benefits being paid to the class. The identity theft monitoring has a retail value of $9.99 or $19.99 per month (depending on whether class members are entitled to the premium version or not). This line item can be valued at somewhere between $9,360.63 and $18,730.63. The potential cash compensation is $1,405,500.00 ($1500 x 937). Additionally, the training and monitoring associated with the injunctive relieve could be as substantial as $290,000 per year. The total potential value of the settlement is arguably up to $1,407,235.63. However, the class members are not guaranteed to recover this much. Most class members will not recover the full $1,500 and not every class member will qualify for premium identity theft. Even so, this factor weighs in favor of finding the fee reasonable.

### 2. Objections

There are no objections or opt outs from the settlement. Of course, this factor weighs in favor of finding the fee reasonable.

### 3. Skill and Efficiency of Attorneys

The attorneys negotiating this settlement have substantial experience in class action litigation, including data breach class actions. The submitted declarations profess the attorneys' experience in these types of litigation and presents them as capable class counsel for this case. Again, this factor weighs in favor of determining that the fee is reasonable.

### 4. Complexity

The complexity and duration of this data breach class action requires experienced counsel. This type of case presents issues on the duty of care an employer owes to its employees in storing

23

their personal information, Article III standing in the context of improper disclosure, types of damages available at trial; and, whether the plaintiffs can obtain and maintain class certification. This factor also weighs in favor of finding the fee reasonable.

### 5. *Risk of Non-Payment*

There exists a risk of non-payment to the class members. Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable.

### 6. *Time*

Class Counsel have spent more than 560 hours on this litigation. Again, this factor weighs in favor of awarding the fee.

### 7. *Awards in Similar Cases*

Most courts use the Lodestar method in data breach cases. Because this case appears to be in line with those settlements, this factor also weighs in favor of awarding the fee.

After applying the *Gunter* factors, the Court finds that the fee produced is reasonable.

## C. Additional Requests

Class Counsel also request that the two class representatives both receive service awards of $1000. Service awards "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel,* No. 09-905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (quotation omitted). Service awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id.* (quoting *In re Cendant Corp.,* 232 F. Supp. 2d at 344). These awards appear to be in line with previous awards in other class action litigation. *See, e.g., Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 160 (E.D. Pa. 2016) (approving service award of $1,000 per named plaintiff).

24

Finally, Class counsel request $5,000 for reimbursement of reasonable costs and expenses, which Accolade will cover and does not oppose.

For these reasons, the Court grants the requested attorneys' fees, reimbursement costs and expenses, and service awards for the two class representatives.

## CONCLUSION

For the foregoing reasons, the Court grants the parties' Motion for Final Approval and Class Counsel's Motion for Attorneys' Fees. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE